UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

THOMAS MELZER
on behalf of himself and
all others similarly situated,

      Plaintiff,                                          Case No. 18-cv-1080

     v.

PRO LABEL, INC.,

      Defendant.

**JOINT MOTION FOR FINAL APPROVAL OF CLASS AND
COLLECTIVE ACTION SETTLEMENT**

**INTRODUCTION**

Plaintiff, Thomas Melzer ("Melzer"), on behalf of himself and all others similarly situated, and Defendant, Pro Label, Inc. ("Pro Label"), jointly move this Court for final approval of the parties' settlement of this lawsuit in accordance with the Settlement Agreement, which was preliminary approved by this Court on September 6, 2019.[1] (ECF No. 27.) The parties have provided the best notice practicable to the Class/Collective and the terms of the settlement are fair, reasonable, and adequate. Accordingly, the parties now jointly move the Court for a Final Order Approving Settlement and Judgement of Dismissal with Prejudice to include the following:

---

[1] The Settlement Agreement was attached as Exhibit A to the parties' *Brief in Support of Joint Motion for Preliminary Approval of Class and Collective Action Settlement, Certification of a Rule 23 Class and Certification of a Collective Action*. (ECF No. 24-1.)

1

(1) Finally approving the Settlement Agreement as fair, reasonable, and adequate pursuant to Fed. R. Civ. P. 23(e);

(2) Declaring that the Settlement Agreement represents a fair and reasonable resolution of a *bona fide* dispute under the Fair Labor Standards Act (FLSA);

(3) Declaring the Settlement Agreement to be binding on Pro Label, Melzer, and all Class Members and Collective Members;

(4) Approving the settlement payments to all Class Members and Collective Members and the Enhancement Payment to Melzer for serving as the Class Representative;

(5) Granting *Plaintiff's Motion for Approval of Award of Attorneys' Fees and Costs to Class Counsel*, ECF No. 28, and approving Class Counsel's award of attorneys' fees in the amount of $83,333.33 and costs in the amount of $500.00;

(6) Dismissing with prejudice the Class Members' and Collective Members' claims against the "Pro Label Released Parties" as defined in the Settlement Agreement; and

(7) Dismissing this action on the merits with prejudice.

## PROCEDURAL AND SETTLEMENT HISTORY

On July 16, 2018, Melzer filed his Complaint with this Court on behalf of himself and all other similarly situated current and former hourly-paid, non-exempt employees of Pro Label, alleging that Pro Label failed to compensate said employees for all hours they were suffered or permitted to work, including at an overtime rate of pay for all hours worked in excess of forty (40) hours in a workweek, as a result of alleged unlawful time shaving or rounding practices (the "Lawsuit."). (ECF No. 1.) Melzer sought to obtain relief under the Wisconsin Wage Payment and Collection Laws ("WWPCL") and FLSA for unpaid wages and overtime compensation, liquidated damages, costs, attorneys' fees, declaratory and/or injunctive relief, and/or any such other relief

the Court deemed appropriate. (*Id.*) Pro Label filed an Answer disputing the allegations asserted in the Complaint. (ECF No. 12.)

In October 2018, counsel for the parties conferred and began initial discussions regarding resolution. (ECF No. 25, ¶ 12; ECF No. 26, ¶ 3.) Toward that end and after making preliminary progress in their discussions, on February 5, 2019, the parties filed their Joint Stipulation to Stay Proceedings (ECF No. 18) and (Proposed) Order Granting Joint Stipulation to Stay Proceedings. (ECF No. 18-1.) Therein, the parties requested that this Court stay all dates and deadlines in this matter until further notice so as to allow the parties sufficient time to explore resolution. On February 6, 2019, this Court approved the parties' Joint Stipulation and ordered the parties to submit a joint report to the Court advising it of the status of this matter on or before August 1, 2019. (ECF No. 20.)

Between October 2018 and July 2019, counsel for the parties engaged in lengthy, thorough, and substantive settlement calculations, discussions, and negotiations by communicating directly and exchanging substantial information, data, and documents necessary to fully and fairly evaluate the claims of putative class/collective members, including relevant comprehensive timekeeping and payroll data for all putative class/collective members, among other things. (ECF No. 25, ¶¶ 12-17; ECF No. 26, ¶¶ 3-5.)

As a result of their nine (9) months of discussions and negotiations, the parties were able to reach an agreement in principle on or about July 25, 2019, with continued discussions thereafter regarding the terms, conditions, timelines, processes, and procedures of settlement. Pursuant to the Court's February 6, 2019 Order and while those discussions remained ongoing, Class Counsel filed a letter with the Court informing it of the parties' agreement in principle and advising that

3

they anticipated filing all necessary approval documents with the Court on or before September 1, 2019. (ECF No. 21.)

On August 30, 2019, the parties filed their *Joint Motion for Preliminary Approval of Class and Collective Action Settlement, Certification of a Rule 23 Class and Certification of a Collective Action*, ECF No. 23, with the Court. The parties' Settlement Agreement was filed with the Court as Exhibit A to the parties' *Brief in Support*, ECF No. 24-1.

On September 6, 2019, this Court entered its *Order Granting Preliminary Approval of Class and Collective Action Settlement, Certification of a Rule 23 Class and Certification of a Collective Action* and scheduled a Fairness Hearing for January 23, 2020. (ECF No. 27.)

## **CALCULATION OF DAMAGES**

Under the Settlement Agreement, the Settlement Fund available to members of the class/collective totals $146,666.67 and is divided into two funds as follows: $58,666.67 is allocated to a "Class Fund" and $88,000.00 is allocated to a "Collective Fund." (ECF No. 24-1.) Based on negotiations between the parties and the data reviewed, it was determined that if the employees had some uncompensated time, those who punched in and out of operations more frequently were the most likely to have experienced any alleged lost wages. Not all employees punch in and out of operations: punch frequency is dependent on each employee's position held while working for Pro Label based on the duties each position performs.

Because an individual's punch frequency was tied to position held, the parties created three (3) "punch groups." The "frequent punch group" includes Finishing, Coater and Press Operator employees. The "occasional punch group" is comprised of Next Up Technician, Pressroom Assistant, Production Supervisor, and Quality Technician employees. The "rarely/never punch group" is comprised of Accounting Personnel, Customer Service, Customer Service Manager,

4

Finishing Lead, Ink Technician, Maintenance Personnel, Material Handler, Plate Mounter, Purchasing Personnel, Receptionist, Scheduling Personnel, Shipping Clerk, Pallet Wrapper, and Warehouse Assistant employees.

Based upon all available information, approximately 50% of the putative class/collective worked in "frequent punch group" positions, approximately 30% worked in "occasional punch group positions", and approximately 20% worked in "rarely/never punched group" positions. Because damages calculations were dependent on employees' punches, and therefore greater damages could arguably be asserted on behalf of those who punched more frequently, the Settlement Fund (defined below) is weighted to allocate more monies to those who punched with more frequency.

Pursuant to a weighted allocation based on punch frequency, 55% of each the Class Fund and Collective Fund were allocated to Class and Collective Members who held positions in the "frequent punch group," 30% of the Class Fund and Collective Fund were allocated to Class and Collective Members who held positions in the "occasional punch group," and the remaining 15% of each of the two (2) funds were allocated to the "rarely/never punch group." (*Id.*) The actual amount each individual will receive is dependent on the "group" that he or she belonged to by virtue of position held,[2] the number of days each individual worked for Pro Label during the applicable time period, and his or her level of participation in the Lawsuit. Specifically:

- If a Class Member took no action (did not opt-out of the Class or opt-into the Collective), the individual will receive only his or her pro-rata share of the Class Fund;

---

[2] Any employee who changed positions during his or her employment during the applicable time period, and thereby changed "punch groups" was compensated by determining the amount of time worked in each "punch group" as applicable, and then assigned a commensurate percentage based on the percentages assigned to the "punch groups."

5

- If a Class Member opted-out of the Class, but opted-into the Collective, the individual will receive only his or her pro-rata share of the Collective Fund;

- If a Class Member did not opt-out of the Class and opted-into the Collective, the individual will receive his or her total *pro rata* share from both the Class Fund and Collective Fund;

- If a Class Member opted-out of the Class and did not opt-into the Collective, the individual is not a part of the Lawsuit and obtains no recovery.

- If an individual did not qualify for the Class and took no action (did not opt-into the Collective), the individual is not a part of the Lawsuit and obtains no recovery.

- If an individual did not qualify for the Class and opted-into the Collective, the individual will receive his or her pro-rata share of the Collective Fund.

Subsequent to preliminary approval of the Settlement Agreement, Class Counsel calculated the individual pro-rata allocations of the Class Fund and Collective Fund for all Class and putative Collective Members, which was then sent to the Settlement Administrator and Pro Label's counsel. (Declaration of Jennifer Mills ("Mills Decl."), ¶ 11.) Those pro-rata allocations were then incorporated into each individual's unique Notice. (*Id.* at ¶ 11, Ex. A.) The parties agree that the payments made to the Class and Collective Members fully compensates for, and may exceed, each Class and Collective Member's potential damages in this matter.

In addition to the amounts allocated to the Class Fund and Collective Fund, the parties also agreed that, subject to Court approval, Melzer will receive an Enhancement Payment in an amount not to exceed $7,500.00, and that Class Counsel will receive an award of attorneys' fees and costs in an amount not to exceed $83,833.33. (ECF No. 24-1.) To that end, on December 30, 2019, Class Counsel filed *Plaintiff's Motion for Approval of Award of Attorneys' Fees and Costs to Class Counsel.* (ECF No. 28.)

6

## SETTLEMENT NOTICE AND PARTICIPATION

On October 4, 2019, the Settlement Administrator mailed 186 Notices to members of the Class and putative Collective. (Mills Decl., ¶ 10.) Based on this mailing date, the response deadline was December 3, 2019. (*Id*.)

Of the 186 Notices, 2 contained forwarding information and were forwarded by the Settlement Administrator to the address provided. (*Id.* at ¶ 13.) Twelve (12) Notices were initially returned as undeliverable. (*Id.* at ¶ 12.) The Settlement Administrator ran a batch trace on the undeliverable Notices and was able to obtain alternative addresses for nine (9) individuals. (*Id.*) Ultimately, of the 186 Notices initially sent, only 7 were undeliverable. (*Id.*)

As of the close of the response period on December 3, 2019, 116 opt-in forms were received from individuals opting-into the Collective, 2 requests for exclusion were received (meaning they opted-out of the Class and did not opt-into the Collective), and no objections or disputes were received. (*Id.* at ¶¶ 14-16.)

In accordance with the parties' Settlement Agreement, within ten (10) business days of the Court's Final Order Approving Settlement, Pro Label will remit $250,000 to the Settlement Administrator. These funds shall be placed in an account accessible to only the Settlement Administrator. (ECF No. 24-1.)

Within twenty (20) business days after the Court enters its Final Order Approving Settlement, the Settlement Administrator will issue payment from the Settlement Fund to all Class and Collective Members for their pro-rata amounts, to Melzer for his Court-approved Enhancement Payment, and to Class Counsel for its Court-approved attorneys' fees and costs. (*Id.*) Any amounts unclaimed by Class Members and Collective Members and amounts attributable to uncashed settlement checks will revert to Pro Label. (*Id.*)

## ARGUMENT

### A. Standard For Final Settlement Approval

Resolution of class action litigation by settlement is favored. *Isby v. Bayh*, 75 F.3d 1191, 1996 (7th Cir. 1996). Employees can bargain, waive, or modify their rights under the FLSA if the court approves of the parties' settlement as a fair and reasonable resolution of a *bona fide* dispute over alleged violations of the FLSA, and the Court then enters the settlement as a stipulated judgment. *Lynn's Food Store, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982).

Similarly, the Court may approve of the settlement of a Fed. R. Civ. P. 23 class action if: (1) the individual class members are afforded a new opportunity to request exclusion from the settlement; (2) a hearing has been conducted; and (3) the court finds that the settlement is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e).

In making this determination, the Court "must weigh the probabilities of victory or defeat as indicated by the legal or factual situation presented and determine whether the compromise, taken as a whole, is in the best interests" of the class/collective members. *United Founders Life Ins. Co. v. Consumers National Life Ins. Co.*, 447 F.2d 647, 655 (7th Cir. 1971) (internal quotations omitted). Other factors courts consider are the complexity, expense, and likely duration of the litigation; reaction of the class members to the settlement; the stage of the proceedings and the discovery completed; the risks of establishing liability; the risks of establishing damages; the ability of defendants to withstand greater judgment; and the range of reasonableness of the settlement funds to a possible recovery in light of all the attendant risks of litigation. *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974).

8

## B. The Proposed Settlement Is A Fair, Reasonable, And Adequate Resolution Of A Bona Fide Dispute

The proposed settlement for this case represents a fair resolution of a *bona fide* dispute between the parties regarding Melzer's claims under the WWPCL and FLSA. The parties continue to maintain a strong belief in their respective positions: Melzer firmly believes in the viability of his class and collective causes of action, while Pro Label denies Melzer's allegations and any and all liability and damages of any kind to anyone with respect to the facts alleged or causes of action asserted in Melzer's Complaint. However, to avoid the burden, expense, and uncertainty of continued litigation, the parties concluded that it was in their best interests to resolve the litigation by entering into the Settlement Agreement which they now request that this Court finally approve.

Simply put, all of the reasons for preliminarily approving the settlement, which were addressed in the parties' *Brief in Support of Joint Motion for Preliminary Approval of Class and Collective Action Settlement, Certification of a Rule 23 Class and Certification of a Collective Action*, ECF No. 24, similarly support the Court's granting of final approval of the parties' Settlement Agreement. That Agreement, which was reached after extensive and arms-length negotiations between experienced counsel, provides substantial relief to Class and Collective Members that is representative of (and generally exceeds) what each individual is owed in wages and overtime compensation, including liquidated damages, during the applicable time period.

## C. Class and Collective Members Were Provided With The Best Notice Practicable Through The Claims Process

The claims process agreed to by the parties and implemented by the Settlement Administrator was entirely sufficient to inform Class and Collective Members of their rights under the Settlement Agreement. Per the terms of the Settlement Agreement, each Notice recipient was afforded sixty (60) calendar days from the date of mailing of the Notice to respond thereto. During

9

the pendency of the Notice Period, the Settlement Administrator corrected the addresses of any Notices that were returned as undeliverable where new addresses were available and provided another opportunity for any such Class and Collective Members to be informed of their rights.

Ultimately, only 7 of a total 186, or 3.8%, of all Notices were undeliverable. (Mills Decl., ¶ 12.) Of the 179 Notices that were successfully delivered, 116 individuals opted-into the Collective, and only 2 individuals requested exclusion, meaning they opted-out of the Class and did not opt-into the Collective. Such success of mailing and participation rates demonstrate that Class and Collective Members were provided with the best notice practicable of the settlement. *See e.g., Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 174-75 (1974).

### D. Melzer's Enhancement Payment and Class Counsel's Attorneys' Fees and Costs

In addition to payments to Class and Collective Members representative of their damages for alleged violations of the WWPCL and FLSA, this Joint Motion seeks approval of payment not to exceed $7,500.00 as an Enhancement Payment to Melzer and of Class Counsel's reasonable attorneys' fees and costs not to exceed $83,833.33.[3]

The Seventh Circuit has recognized that, in appropriate cases, class representatives may be entitled to incentive awards. *See Spicer v. Chi. Bd. Options Exch.*, 844 F. Supp. 1226, 1267 (N.D. Ill. 1993) (citing *In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 571 (7th Cir. 1992)). The amount of the award can reflect the extent to which the class has benefitted from the plaintiff's efforts to protect the interests of the class and the amount of time and effort expended. *See Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998).

Here, Melzer's Enhancement Payment was agreed-upon between the parties and negotiated

---

[3] Class Counsel addressed the reasonableness of its requested award of attorneys' fees and costs in *Plaintiff's Motion for Approval of Award of Attorneys' Fees and Costs to Class Counsel*, ECF No. 28.

10

separately from the amounts or compensation to be paid to the Class and Collective Members Opt-In Plaintiffs and also serves as consideration for Melzer's release of claims as set forth in the parties' Settlement Agreement. (*See* ECF No. 24-1.)

The parties believe that this Payment is a fair and reasonable request. Further, Pro Label does not oppose Class Counsel's application for attorneys' fees and costs.

## CONCLUSION

For the reasons set forth above, the parties respectfully request that the Court enter the proposed Final Order Approving Settlement filed simultaneously herewith, which grants final approval of the settlement of this dispute on the terms set forth in the Settlement Agreement.

Dated this 15th day of January, 2020.

| | |
|---|---|
| s/ *James A. Walcheske* | s/ *Rebeca M. López* |
| JAMES A. WALCHESKE | REBECA M. LOPEZ |
| State Bar No. 1065635 | State Bar No. 1084842 |
| WALCHESKE & LUZI, LLC | GODFREY & KAHN, S.C. |
| 15850 West Bluemound Road, Suite 304 | 833 East Michigan Street, Suite 1800 |
| Brookfield, Wisconsin 53005 | Milwaukee, Wisconsin 53202 |
| Email: jwalcheske@walcheskeluzi.com | Email: rlopez@gklaw.com |
| Telephone: (262) 780-1953 | Telephone: (414) 273-3500 |
| *Attorney for Plaintiff* | *Attorney for Defendant* |

21738770.2